[No. A033273. First Dist., Div. Five. July 2, 1987.]

MELISA EVANS et al., Plaintiffs and Appellants, v.
CELOTEX CORPORATION, Defendant and Respondent.

742

---

**COUNSEL**

Burton Danziger and Steven Kazan for Plaintiffs and Appellants.

Barbara A. Silver, Laura Przetak, Carolyn Collins and Berry & Berry for Defendant and Respondent.

---

**OPINION**

**LOW, P. J.**—We hold that after a plaintiff has lost a personal injury suit and then dies, the ensuing judgment collaterally estops his heirs from any new lawsuit for wrongful death arising from the same injury.

Plaintiffs, the widow and children of the deceased Stokes Evans, appeal from a judgment of dismissal entered on their wrongful death complaint against Celotex Corporation (Celotex). The complaint alleged that Evans's death was caused by exposure to asbestos products made or sold by defendant Celotex and others.

In a prior personal injury action, Evans sued Celotex and other companies, claiming that he developed asbestosis as a result of occupational exposure to asbestos products manufactured by the defendant companies while he worked at the Hunters Point Naval Shipyard from 1944 through 1958. A jury returned a general defense verdict and judgment was entered on January 17, 1983. Evans died two days later. On January 17, 1984, plaintiffs filed a wrongful death action.

Celotex argued that plaintiffs were collaterally barred from proceeding because of the adverse verdict in the personal injury action. The trial court agreed and ordered the wrongful death action be dismissed. We affirm.

## I

■ The doctrine of collateral estoppel bars parties or their privities from relitigating any issue necessarily decided in a prior proceeding, whether the issue is brought on the same or a different cause of action. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].) In order to apply the bar of collateral estoppel, defendant must prove: (1) the prior action resulted in a final judgment on the merits; (2) the issues presented in the wrongful death action are identical to those litigated in the former action; and (3) the parties in the wrongful death action were parties to the former action or in privity with parties in the former action. (See *Zaragosa v. Craven* (1949) 33 Cal.2d 315, 317 [202 P.2d 73, 6 A.L.R.2d 461]; *Beverly Hills Nat. Bank v. Glynn* (1971) 16 Cal.App.3d 274, 283 [93 Cal.Rptr. 907].) It is agreed the former trial ended in a final judgment on the merits.

■ Arguing that the issues in the two cases are not identical, plaintiffs contend that the general verdict in favor of defendant does not necessarily mean that the jury found defendant was not liable. We disagree. Plaintiffs' right to recovery, like the deceased's, depends on the liability of defendant Celotex. The former action for personal injury damages alleged counts for negligence, breach of implied warranty of merchantability, strict liability, conspiracy to defraud and fraud. The issues litigated in the former trial, i.e., intentional and negligent tortious conduct, strict liability, comparative negligence and causation, were necessarily resolved against the deceased when the jury returned a general verdict in favor of defendant Celotex. ■ A

general verdict implies the existence of every fact essential to support the judgment. (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 319, p. 320.)

The identical issues of causation and liability are raised herein. The prior judgment in favor of defendant acts as a collateral estoppel and prevents relitigation of these very issues, even though the causes of action are different. (See *Zaragosa* v. *Craven, supra,* 33 Cal.2d at p. 321; *Beverly Hills Nat. Bank* v. *Glynn, supra,* 16 Cal.App.3d at p. 284; *Aguilar* v. *Los Angeles County* (9th Cir. 1985) 751 F.2d 1089, 1093; 7 Witkin, Cal. Procedure, *supra,* Judgment, § 259, pp. 698-699.)

A similar result was reached in *Secrest* v. *Pacific Electric Ry. Co.* (1943) 60 Cal.App.2d 746 [141 P.2d 747]. There, the widow of the deceased brought a wrongful death action for injuries sustained when the car the deceased was driving, and in which she was a passenger, collided with defendant's bus. Both the widow and the deceased had previously filed a complaint for personal injuries arising out of the same collision, which resulted in a jury verdict for the defendant. The court recognized that the action for wrongful death is a separate cause of action which belongs to the heirs. Nonetheless, the court concluded that a prior adverse judgment against the deceased in a personal injury action bars a subsequent wrongful death action based upon the same facts, because the prior action " 'negatives the existence of conditions which would charge the defendant with responsibility for the death.' [Citation.]" (*Id.,* at p. 751.) Here, as in *Secrest,* the prior defense verdict negatives the existence of liability of Celotex for Evans's injuries. Plaintiffs suggest the jury could have reached their verdict on alternative bases: (1) Evans failed to prove causation; (2) Evans's condition was not asbestos related; or (3) that the jury could not make up its mind. Each of these "alternatives" conclusively establishes that Celotex is not liable for Evans's condition. Contrary to plaintiffs' contention, there can be no other interpretation of the jury's general defense verdict. Accordingly, we hold that the issues in the instant action were decided in defendant's favor in the prior adjudication and cannot be relitigated.

## II

In general, privity between parties exists when the plaintiffs in the second action are sufficiently close to the unsuccessful party in the original action to preclude relitigation of the same issues. (See *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 875; *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 948 [119 Cal.Rptr. 139].) Traditionally, it was determined that privity " 'involves a person so identified in interest with another that he represents the same legal right.' " (*Zaragosa* v. *Craven, supra,* 33 Cal.2d at p. 318.) Under the modern approach, privity denotes that the plaintiffs in the succeeding action have an "identity or community of interest with, and

adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (*Clemmer* v. *Hartford Insurance Co., supra,* at p. 875; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 951 [126 Cal.Rptr. 805, 544 P.2d 941]; *Aguilar* v. *Los Angeles County, supra,* 751 F.2d at p. 1093.)

Here, the right to recover against defendant Celotex depends, in both cases, on the liability of the defendant and the lack of comparative fault of the deceased. ■■■ Plaintiffs' interests in the wrongful death action are inextricably linked to the determination of the deceased's rights in the prior action. The loss they suffer arises by virtue of the injury caused to the deceased. For example, contributory negligence of the deceased, when it was a complete defense, barred a suit for wrongful death by his heirs. (See *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 199-200 [288 P.2d 12]; *Carlisle* v. *Kanaywer* (1972) 24 Cal.App.3d 587, 591 [101 Cal.Rptr. 246].) It would be anomalous to deny recovery to the deceased but to award damages to his heirs based on the same set of facts and legal issues. Further, it can fairly be said that plaintiffs' legal interests were adequately represented in the personal injury action as if they had been parties thereto. As such, they are deemed to be in privity with him.

Relying on *Kaiser Foundation Hospitals* v. *Superior Court* (1967) 254 Cal.App.2d 327 [62 Cal.Rptr. 330], plaintiffs argue that they are not in privity with the deceased. There, the daughter of the deceased was allowed to proceed in an action for wrongful death against defendant hospital, despite the fact that the deceased's prior suit for personal injuries against defendant hospital resulted in a jury verdict for defendant. The reviewing court found that the issues in both cases were the same. However, it concluded that the daughter was not in privity with the deceased in the prior litigation. In reaching this determination, the court relied on the fact that the cause of action for wrongful death was separate and distinct from the cause of action the deceased had before she died. (*Id.,* at p. 333.) We find this reasoning to be faulty.

■■■ Collateral estoppel may act as a bar to a subsequent litigation on the same set of facts even though different causes of action are involved. (See *Zaragosa* v. *Craven, supra,* 33 Cal.2d at p. 321; *Beverly Hills Nat. Bank* v. *Glynn, supra,* 16 Cal.App.3d at pp. 283-284; 7 Witkin, Cal. Procedure, *supra,* Judgment, § 257, pp. 696-698.) Collateral estoppel bars relitigation of the same issues; it does not require identity of legal theories or causes of action. If it did, there would be no end to litigation for injuries arising out of the same facts, as long as a party could offer another legal theory by which

the same issue might be differently decided. (See *Sutphin v. Speik* (1940) 15 Cal.2d 195, 205 [99 P.2d 652].)

We believe the court in *Kaiser Foundation Hospitals, supra,* 254 Cal.App.2d 327, erroneously equated the concept of privity with the existence of the same cause of action. Privity is satisfied so long as the plaintiffs' legal interests are adequately represented in the prior action. Privity is not defeated because the parties raise a different theory or cause of action in support of their rights of recovery. For these reasons we decline to follow that decision.

## III

Plaintiffs argue that collateral estoppel cannot be applied if new facts have occurred since the judgment on the prior hearing. They claim that a lung biopsy could not be performed while the deceased was alive and that a pathological diagnosis of lung tissue was performed only after his death. Plaintiffs contend that based on the evidence available at the trial of the personal injury action, the jury concluded that the deceased's progressive deterioration was not from asbestosis but from another disease; that as a result of the better diagnostic evaluation following the autopsy, asbestosis could be proved to be the proximate cause of his death. Plaintiffs have not indicated what this biopsy showed and how it differed, if at all, from the evidence adduced at the personal injury trial.

In *Melendres v. City of Los Angeles* (1974) 40 Cal.App.3d 718 [115 Cal.Rptr. 409], members of the police and fire departments sued the city council to make increased salary adjustments that reflected prevailing wages in private industry as provided by the city charter. In a prior action involving the same parties 10 years earlier, the appellate court affirmed the council's finding that the charter provision did not apply because there was no corresponding job classification in private industry. At the time of the second suit, the city had adopted a plan (the Jacobs plan) of a consultant firm which created a method to enable the city to ascertain wages for sworn personnel corresponding to the prevailing wages paid to civilian employees with private industry job counterparts. (*Id.,* at p. 724.) Citing the prior litigation, the city argued that plaintiffs were collaterally estopped from requesting the city to pay prevailing wages as performed by persons in private industry. The trial court and reviewing court disagreed, holding that collateral estoppel does not bar a later suit if new facts of changed circumstances have occurred since the prior decision. (*Id.,* at p. 730.) The presence of the Jacobs plan, which did not exist at the time of the prior litigation, was deemed a sufficient change of circumstance to bar the application of collateral estoppel.

 Res judicata or collateral estoppel "was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants." (*Hurd* v. *Albert* (1931) 214 Cal. 15, 26 [3 P.2d 545, 76 A.L.R. 1348].) Unlike the situation in *Melendres,* here, no new facts or issues came to light since the prior litigation. The legal relationship of the deceased vis-à-vis Celotex had not changed and there were no new events or conditions which altered the respective rights of the parties or caused a different legal doctrine to be applied. (Compare *Hurd* v. *Albert, supra,* at pp. 26-27 [facts changed since the prior litigation to make the enforcement of a restrictive covenant on property unenforceable]; see also *Brake* v. *Beech Aircraft Corp.* (1986) 184 Cal.App.3d 930, 941-943 [229 Cal.Rptr. 336]; *Hasselbach* v. *Dept. Alcoholic Bev. Control* (1959) 167 Cal.App.2d 662, 665-667 [334 P.2d 1058].) Here, the additional test performed during the autopsy simply goes to the weight of the evidence against Celotex; i.e., this evidence did not establish a previously undiscovered theory of liability nor did it denote a change in the parties' legal rights. An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise, there would be no end to litigation. Accordingly, we hold that the results from the lung biopsy do not operate to prevent the application of collateral estoppel.

The judgment of dismissal is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied July 27, 1987, and appellants' petition for review by the Supreme Court was denied September 16, 1987.